# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

AMY C. MCALESTER,            )
                             )
        Plaintiff,   )
                             )
        v.           )    Case No. CIV-18-225-SPS
                             )
COMMISSIONER of the Social   )
Security Administration,     )
                             )
        Defendant.   )

## OPINION AND ORDER

The claimant Amy C. McAlester requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that the claimant was not disabled. As discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-eight years old at the time of the administrative hearing (Tr. 32). She earned a college degree and has worked as a kindergarten teacher (Tr. 19, 187). The claimant alleged that she has been unable to work since May 23, 2014, due to schizoaffective disorder, obesity, post-traumatic stress disorder (PTSD), depression, anxiety, problems with her feet, and bipolar disorder (Tr. 186).

**Procedural History**

On August 20, 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 23, 2017 (Tr. 10-21). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but that she had the following nonexertional limitations: she was limited to simple tasks and some complex tasks, allowing for semiskilled work; she was limited to superficial contact with co-workers and supervisors; and she was limited to superficial contact with the public on an occasional basis (Tr. 15). The ALJ thus concluded

that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, production assembler, small product assembler, and laundry worker I (Tr. 19-21).

**Review**

The Plaintiff alleges that the ALJ erred by: (i) failing to properly evaluate the opinions of her treating physician, Dr. Michael Collins, and (ii) failing to properly evaluate statements by the claimant and her father. The Court agrees with the claimant's first contention, and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of schizoaffective disorder, depression, anxiety, and PTSD (Tr. 12). Relevant medical records reflect that the claimant's parents took her to Family Medical Clinic on June 28, 2013 due to concerns about erratic behavior (Tr. 285). She was assessed with depression and sent home (Tr. 286). In September 2013, the claimant reported significant improvement on medication, specifically with relationship to dizziness, attention, concentration, and memory (Tr. 291). Dr. Tonya Phillips noted that the claimant likely had a mild cognitive impairment, likely pseudodementia, that was related to her underlying depression (Tr. 291).

The claimant was treated at Stigler Health & Wellness Center by, *inter alia*, Dr. Michael Collins. Treatment notes reflect the claimant was diagnosed with schizo-affective disorder and PTSD (Tr. 306). She was also taken to this clinic by her parents on July 24, 2015, reporting impulsivity, poor concentration, and a potential plan to hit an embankment (Tr. 319). The notes reflect the parents' reported that the claimant tended to minimize her symptoms, and Dr. Collins characterized her as a "complex case with mood, anxiety and

thought [symptoms], with [history] of trauma" (Tr. 319). Further treatment notes in November and December 2015 reflect the claimant reported improvement and a decrease in delusional thinking (Tr. 423). The claimant's family also reported improvement but noted continued impulsiveness and indecisiveness (Tr. 428). In February 2016, treatment notes reflect the claimant had continued delusional/disorganized thinking, as well as continued paranoia (Tr. 482).

On October 6, 2016, Dr. Collins wrote a letter to the claimant, in which he stated that she was under his care for schizoaffective disorder, and that she was to apply for disability as part of her treatment. Additionally, he stated that she would not work for one year, and that she ought to apply for food stamps (Tr. 516). On May 28, 2016, Dr. Collins wrote a second letter to the claimant, noting again that she was unable to begin or maintain employment or vocational rehabilitation due to her schizoaffective disorder, and that any attempt to gain employment or vocational rehabilitation would result in "remarkable deterioration of function and may increase risk of self harm." (Tr. 595).

The claimant also received mental health treatment at Green Country Behavioral Health Services, Inc. The claimant reported doing well on her medication in January 2015, and experienced positive responses, but treatment notes in June 2015 state that the claimant continued "to struggle to obtain a complete and optimal response to current medication therapy" (Tr. 361, 364, 389). She stated that the medication helped but did not eliminate her depression and anxiety (Tr. 392). Her diagnoses included major depressive disorder recurrent, severe, without psychotic, as well as anxiety disorder not otherwise specified (Tr. 378).

State reviewing physicians determined that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public (Tr. 74-75, 90-91). Dr. Burnard Pearce's conclusion, affirmed on reconsideration, was that the claimant could perform some complex tasks, relate to others on a superficial work basis, and adapt to a work situation, but that she should avoid constant contact with the general public (Tr. 75, 91).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as much of the evidence contained in the medical record (Tr. 15-19). As to the medical record, the ALJ noted times in the record when the claimant reported improvement and that her medications were working well and concluded that she had no greater limitations than those he assigned in the RFC (Tr. 16-17). He further noted the claimant's reports of anxiety and impulsivity, as well as difficulty completing tasks, concentrating, and following instructions and concluded that superficial contact with coworkers, supervisors, and the public somehow accommodated those impairments (Tr. 16-17). He further found that limitation to simple and some complex tasks accounted for her problems focusing on completing tasks and anxiety (Tr. 17). The ALJ then gave great weight to the opinions of the state reviewing physicians because treatment records showed the claimant doing well, and the limitations imposed by these physicians accounted for her continued issues with impulsivity and socializing (Tr. 18). He then gave little weight to Dr. Collins's two opinions, stating that the issue of whether a claimant is disabled is reserved to the Commissioner and that it was inconsistent with the state reviewing physician opinions

(both of which pre-dated much of Dr. Collins's treatment notes and were issued months before his first letter), and finding his opinion lacking an explanation for the claimant's ability to work, as well as inconsistent with his treatment notes (Tr. 18).

The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). The Court notes that although the ALJ *did* include some limitations related to the claimant's "mental impairments" in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for each of the claimant's severe mental impairment of schizoaffective disorder, depression, anxiety, and PTSD. Indeed, the ALJ largely appeared to question the severity of her impairments entirely.

Furthermore, the medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*,

350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The Court finds that the ALJ's assessment, set forth above, falls short of this requirement.

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991). In finding Dr. Collins's treatment notes inconsistent with his opinion, the ALJ ignored the waxing and waning nature of the claimant's mental impairments, including his assessment that

attempts at employment or vocational rehabilitation would result in "remarkable deterioration" (Tr. 595). This ignores Dr. Collins's years-long treatment relationship with the claimant and knowledge regarding her limitations that he possessed as part of that treatment relationship. *See Langley,* 373 F.3d at 1119; 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

Finally, although an ALJ is not required to give controlling weight to an opinion that the claimant could not work, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), he *is required* to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527, specifically in relation to functional limitations. Here, the ALJ ignored the evidence in the record that the claimant's depression, depression, anxiety, impulsivity, and paranoia continued even after she was considered stable on her medications. He further failed to consider the effect employment could have on the claimant's purportedly stable mental condition, which Dr. Collins indicated would lead to deterioration of her mental status. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is

supported by the record."). Instead, the ALJ ignored that evidence and focused on those notes where the claimant was doing well. The ALJ thus improperly evaluated the treating physician opinion that the claimant could not work. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F2d 382, 385-386 (7th Cir. 1984).

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant could perform, if any, and ultimately whether she was disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**